Thomas Leo SPRINGS *v.* STATE of Arkansas

CR 06-221                                                244 S.W.3d 683

Supreme Court of Arkansas
Opinion delivered December 7, 2006

*W.H. Taylor* and *Stevan E. Vowell*; *Tonya L. Patrick*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Thomas Leo Springs appeals the judgment and commitment order of the Sebastian County Circuit Court convicting him of one count of

capital murder and two counts of aggravated assault. Appellant was sentenced to death on the count of capital murder and six years in prison and a $10,000 fine on each count of aggravated assault to run . consecutively. On appeal, Appellant raises six arguments for reversal: the trial court (1) erred, as a matter of law, by failing to intervene and appoint a head-injury expert to examine him; (2) erred in submitting aggravating circumstances to the jury that were not warranted by the evidence; (3) erred in refusing to give Appellant's proffered instruction on mitigating circumstances and, instead, submitting Arkansas Model Criminal Instruction Form 2; (4) erred in admitting State's Exhibits 23 and 24 because that evidence was cumulative and its probative value was substantially outweighed by the danger of unfair prejudice; (5) erred when it allowed Appellant to be charged under Ark. Code Ann. § 5-10-101 (Supp. 2003) in violation of the Eighth Amendment to the United States Constitution and the Arkansas Constitution; (6) abused its discretion in admitting victim-impact evidence during Appellant's sentencing because, under Arkansas law, such evidence is irrelevant in capital-murder cases. As this case involves a sentence of death, jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

Appellant does not challenge the sufficiency of the evidence. Accordingly, only a brief recitation of the facts is necessary. *See, e.g., Armstrong v. State*, 366 Ark. 105, 233 S.W.3d 627 (2006); *Garcia v. State*, 363 Ark. 319, 214 S.W.3d 260 (2005).

On January 21, 2005, Appellant rammed his car head-on into another car holding three individuals: his wife, Christina Springs; Mrs. Springs's sister, Kelly Repking; and Mrs. Repking's three-year-old daughter, Paige Garner. After the collision, Appellant exited his vehicle and smashed in the passenger-side window next to Mrs. Springs. After repeatedly bashing her face into the dashboard, he returned to his car and retrieved a knife. He then returned to the broken window and stabbed Mrs. Springs multiple times. Mrs. Springs died as a result.

Appellant was charged with capital murder, pursuant to section 5-10-101, and two counts of aggravated assault, pursuant to Ark. Code Ann. § 5-13-204 (Supp. 2003).[1] Following a jury

---

[1] Appellant was also charged as a habitual criminal, pursuant to Ark. Code Ann. § 5-4-501 (Supp. 2003); however, that charge was not presented to the jury.

trial, Appellant was convicted of capital murder and both counts of aggravated assault. This appeal followed.

## I. Failure to Intervene and Appoint a Head-Injury Expert

For his first argument on appeal, Appellant claims that the trial court erred, as a matter of law, by failing to intervene and appoint a head-injury expert to examine him. Prior to trial, Appellant filed a motion for appointment of an expert asking the trial court to authorize the appointment of an expert to examine him for a possible brain injury. The trial court denied Appellant's motion, stating that it was premature, but that he could renew his request subsequent to receipt and review of the previously ordered mental-health examination. Appellant argues that this was an error, as the issue of his brain injury was separate and distinct from the basic psychological assessment ordered by the trial court. Furthermore, Appellant argues that the psychological examination, the Forensic Evaluation Report, that was submitted to the trial court was inconsistent, and it made no mention of the brain-injury issue.

Appellant concedes that he did not move again for the appointment of an expert, nor did he make a contemporaneous objection to the admission of the report before the trial court. Nevertheless, he asserts that, under these circumstances, an exception, pursuant to *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), should apply. According to Appellant, it was imperative that the trial court intervene and appoint the expert previously requested because the issue of his mental health as it related to his head injury was critical to the jury's consideration of whether he should be convicted of capital murder. Moreover, he argues that without having this expert appointed to examine him for a possible head injury, he was deprived of a "basic tool" of his defense.

It is well settled that a contemporaneous objection is required to preserve an issue for appeal, but this court has recognized four exceptions to the rule, known as the *Wicks* exceptions. *See, e.g., Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003). These exceptions occur when (1) a trial court, in a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) a trial court errs at a time when defense counsel has no knowledge of the error and thus no opportunity to object; (3) a trial court should intervene on its own motion to correct a serious error; and (4) the admission or exclusion of evidence affects a defendant's substantial rights. *Cal-*

*nan v. State*, 310 Ark. 744, 841 S.W.2d 593 (1992). Here, Appellant is asking this court to apply the third *Wicks* exception.

In *Wicks*, we explained that the "third exception is a mere possibility, for it has not yet occurred in any case." 270 Ark. at 786, 606 S.W.2d at 369. The third exception is a narrow one and, since *Wicks*, it has rarely been applied. In *McKenzie v. State*, 362 Ark. 257, 208 S.W.3d 173 (2005), we reaffirmed the narrowness of the third exception:

> Indeed, this court recently pointed out in *Anderson*, that the third *Wicks* exception has only been applied to cases in which a defendant's fundamental right to a trial by jury is at issue. The *Anderson* court further pointed out that the third *Wicks* exception "has not been applied to consider possible prosecutorial errors in relation to cross examination, to privileged testimony, or closing arguments[.]"

*Id*. at 277, 208 S.W.3d at 184 (citations omitted).

In the present case, Appellant is attempting to extend the third *Wicks* exception to cover his failure to renew his pretrial motion for the trial court to appoint an expert to examine him for a possible brain injury "that might impact his ability to control his emotions." This is simply not something that falls within the purview of the third exception. As pointed out in *Anderson*, the third *Wicks* exception applies when "the error is so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury correctly." 353 Ark. at 395, 108 S.W.3d at 599.

Here, Appellant's argument is based upon something that occurred outside of the presence of the jury *and* is primarily based upon his claim that his mental-evaluation report contained a contradictory error. Specifically, Appellant asserts that the report contains the following contradictory and inconsistent statement:

> It is my opinion that at the time of the alleged conduct, should the fact finder conclude that he committed the charged offenses, he did not have a mental disease or mental defect. He may have been depressed and distraught about his domestic situation and he may have been angry about the divorce and separation from his children. *There was, however, no mental disease or mental defect, and there was disorder which could be defined as a substantial disorder of thought,*

*mood, perception, orientation, or memory that grossly impairs judgment, behavior, and the capacity to recognize reality.* [Emphasis added.]

The State counters that this statement merely contains a typographical error that can be reasonably fixed according to the ordinary principles of grammar and logic. Either way, this is not something that rises to a level of error that affected the very structure of Appellant's criminal trial, which would require the trial court to intervene.

Furthermore, this alleged error by the trial court did not deprive Appellant of a "basic tool" in his defense. Relying on *Ake v. Oklahoma*, 470 U.S. 68 (1985), Appellant argues that the failure to have an expert appointed to examine him for a possible brain injury deprived him of a basic tool in his defense because such an expert must be available to assist in evaluating, preparing, and presenting his defense. This argument is flawed for two reasons.

First, Appellant has misapplied the Supreme Court's holding in *Ake*. There, the Court explained that the State "must take steps to assure that the defendant has a fair opportunity to present his defense." *Id.* at 76. Relying on this principle, the Court held:

> that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the State the decision on how to implement this right.

*Id.* at 83.

■ Here, the trial court granted Appellant's motion for psychological examination and he was, in fact, examined by a psychologist. Paul Deyoub, Ph.D., interviewed and examined Appellant, and filed his Forensic Evaluation Report with the trial court. Thus, the trial court followed the principle outlined in *Ake*.

■ Second, Appellant is now attempting to claim that this report contained errors and also did not address his possible brain injury. Consequently, Appellant concludes that the trial court

erred when it did not step in and appoint a specific head-injury expert. However, Appellant could have, and failed to, object to the admission of the report into evidence. He cannot now assert that the trial court's failure to appoint a head-injury expert rises to the level of protection afforded by the third *Wicks* exception because (1) he was given an opportunity by the trial court to renew his motion for an appointment of the expert and he failed to do so, and (2) it was not the trial court's duty to adequately prepare and present a defendant's defense. To extend this *Wicks* exception as Appellant requests is not supported by any case law and would open this narrow exception to a floodgate of alleged errors by the trial court for a supposed failure to intervene.

Appellant's asserted error does not fall within a *Wicks* exception and, therefore, is not properly preserved for review. Finally, Appellant's argument cannot be reviewed as an issue that falls within the purview of Ark. R. App. P. – Crim. 10(b)(iv) because it was not a serious error requiring the trial court to intervene and issue an admonition or declare a mistrial.

## II. Aggravating Circumstances

Appellant's second argument for reversal is that the trial court erred in submitting aggravating circumstances to the jury that were not warranted by the evidence. Specifically, Appellant argues that Arkansas Model Criminal Instruction Form 1, as submitted to the jury, included two aggravating circumstances that were not supported by evidence. Thus, he concludes that the trial court had a duty to omit these aggravating circumstances, and the trial court's failure to do so tainted the jury deliberations. Despite Appellant's argument that a contemporaneous objection was not required because this situation falls within a *Wicks* exception, the State contends that review of this issue is procedurally barred because Appellant failed to make a contemporaneous objection to the aggravating circumstances.

Upon review, Appellant objected three times to the submission of aggravating circumstances. At the close of the State's evidence, Appellant moved to dismiss all of the aggravating circumstances for insufficient evidence. Prior to the submission of the jury instructions, Appellant renewed his motions to dismiss all of the aggravating circumstances for lack of evidence and explicitly objected "to any aggravating circumstances being offered since we had asked that they all be dismissed." Nevertheless, the State

contends that these objections were bare claims for dismissal and were inadequate to preserve any challenge.

■ Here, Appellant moved to dismiss all of the aggravating circumstances for insufficient evidence. A motion to dismiss is identical to a motion for a directed verdict in a jury trial and is a challenge to the sufficiency of the evidence. *See Reed v. State*, 91 Ark. App. 267, 209 S.W.3d 449 (2005). However, a motion for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. *Banks v. State*, 354 Ark. 404, 125 S.W.3d 147 (2003). Here, Appellant made a broad objection to all aggravating circumstances through his motions to dismiss for lack of evidence. None of Appellant's objections specified the respect in which the evidence was deficient nor did they specify either of the two aggravating circumstances now before us on appeal. As such, Appellant has failed to preserve this argument for review.

Furthermore, this issue does not fall within the scope of the first *Wicks* exception. In *Smith v. State*, 343 Ark. 552, 573, 39 S.W.3d 739, 752 (2001), we explained:

> A challenge to the sufficiency of the evidence pertaining to an aggravating circumstance does not involve "the trial court's failure to bring to the jury's attention a matter essential to its consideration of the death penalty itself." *Wicks v. State*, 270 Ark. at 785, 606 S.W.2d at 369. Instead, just the opposite is true: that is, the trial court submitted each of the three aggravating circumstances to the jury for their consideration. There was simply no "failure" by the trial court, as is required by the plain language of the first *Wicks* exception. Moreover, as previously mentioned, this narrow exception to the objection requirement has only been applied in four cases, and we have limited its application to specific constitutional and statutory error arguments that are distinctly different from a sufficiency-of-the-evidence argument.

Therefore, the submission of the aggravating circumstances to the jury is not a situation that falls within a *Wicks* exception. As such, Appellant's argument cannot be addressed on appeal.

■ Furthermore, Rule 10(b)(vi) requires us to review whether the evidence supports the jury's finding of a statutory aggravating circumstance or circumstances. Here, the jury found three aggravating circumstances: (1) Appellant previously commit-

ted another felony, an element of which was the use or threat of violence to another person or creating a substantial risk of death or serious physical injury to another person; (2) in the commission of the capital murder, Appellant knowingly created a great risk of death to a person other than the victim; (3) the capital murder was committed in an especially cruel or depraved manner. Upon review, these findings are supported by the evidence and no reversible error has occurred.

### III. AMCI Form 2

For his third point of appeal, Appellant argues that the trial court erred in refusing to give his proffered jury instruction on mitigating circumstances and, instead, submitting Arkansas Model Criminal Instruction Form 2. Specifically, Appellant maintains that the trial court erroneously relied on *Dansby v. State*, 319 Ark. 506, 893 S.W.2d 331 (1995), and *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993), because these decisions and their application are inconsistent with *Miller v. State*, 269 Ark. 341, 605 S.W.2d 430 (1980), *overruled in part sub nom. Miller v. Lockhart*, 65 F.3d 676 (8th Cir. 1995), which states that trial courts should instruct jurors on the mitigating and aggravating circumstances relevant to the case.[2] Relying on *Miller*, Appellant contends that effective consideration of the type of individualized mitigating factors required in death-penalty cases is not adequately facilitated by simply giving jurors the opportunity to search their memories to see if they can come up with mitigating factors not otherwise captured by Form 2.

Upon review, Appellant's reliance on *Miller* is misplaced as the issue there was whether the proper law and procedure was followed in the penalty stage of the appellant's trial. We explained that "[t]he latitude of a jury to list other mitigating circumstances in writing on the form is a benefit to a defendant and certainly not prejudicial" and concluded that there was no error in the application of the law or in the procedures followed during the penalty stage of the appellant's trial. 269 Ark at 358, 605 S.W.2d at 440.

---

[2] Appellant argues that we should overrule *Dansby* and *Sheridan* where they are inconsistent with the *Miller* holding. This will not be done. First, Appellant has not met the high burden of overruling precedent. *See McGhee v. State* 334 Ark. 543, 975 S.W.2d 834 (1998), *superseded by statute*, The Emergency Clause of Act of April 15, 1999, No. 1569, 1999 Ark. Acts 7086, *as recognized in Moseley v. State*, 349 Ark. 589, 80 S.W.3d 325 (2002). Second, *Dansby* and *Sheridan* are not inconsistent with the essence of the *Miller* holding.

Here, we are faced with an entirely different issue: whether the trial court erred in denying Appellant's proffered instruction form on mitigating circumstances and, instead, submitting Form 2 to the jurors. Form 2, as submitted to the jury, contained these six mitigating circumstances:

[1] The capital murder was committed while Thomas Leo Springs was under extreme mental or emotional disturbance.

[2] The capital murder was committed while Thomas Leo Springs was acting under unusual pressure or influences or under the domination of another person.

[3] The capital murder was committed while the capacity of Thomas Leo Springs to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse.

[4] The youth of Thomas Leo Springs at the time of the commission of the capital murder.

[5] The capital murder was committed by another person and Thomas Leo Springs was an accomplice and his participation was relatively minor.

[6] Thomas Leo Springs has had no significant history of prior criminal activity.

Appellant's proffered instruction form added the following as mitigating circumstances:

[1] Thomas Leo Springs has performed deeds of service for Vivian O'Neill.

[2] Thomas Leo Springs has given encouragement to other people.

[3] Thomas Leo Springs has been a good employee of Whirlpool Corporation.

[4] Thomas Leo Springs has been a good employee of the Arkansas Missouri Railroad.

[5] Thomas Leo Springs has been a good employee of J & V Manufacturing.

[6] Thomas Leo Springs served as a volunteer for Ragon Homes Youth Activities.

[7] Thomas Leo Springs cooperated with law enforcement authorities by giving a confession to the murder.

[8] Thomas Leo Springs cooperated further by assisting in allowing his home to be searched.

However, the proffered form did not contain factors 2, 5, or 6 from Form 2. In explaining the forms to the jury before deliberation, the trial court said:

> If you do unanimously find one or more of those aggravating circumstances, you should then complete Form 2 which deals with mitigating circumstances. Form 2 lists some factors that you may consider as mitigating circumstances. However, you are not limited to that list. You may in your discretion find other mitigating circumstances. Form 2 is entitled mitigating circumstances.

In giving this instruction and in its decision to submit Form 2, the trial court relied upon *Dansby*, 319 Ark. 506, 893 S.W.2d 331, and *Sheridan*, 313 Ark. 23, 852 S.W.2d 772. Upon review, this reliance was not in error.

The Supreme Court has held that any death sentence resulting from a deliberate exclusion of any mitigating circumstances is presumptively invalid. *See, e.g., Penry v. Lynaugh*, 492 U.S. 302 (1989); *Hitchcock v. Dugger*, 481 U.S. 393 (1987). We have recognized this rule when dealing with challenges to the submission of Form 2 rather than a proffered instruction. *See Carmago v. State*, 327 Ark. 631, 940 S.W.2d 464 (1997); *Dansby*, 319 Ark. 506, 893 S.W.2d 331; *Sheridan*, 313 Ark. 23, 852 S.W.2d 772. Moreover, we have consistently held that where the defendant is allowed to present possible mitigators listed on the form, it is not error to submit the standard form to the jury in lieu of a form proposed by the defendant. *Id.*

■ This case is no different than those that have preceded it; there was no deliberate exclusion because Appellant was permitted to make his argument to the jury, and the jury was specifically told that the listed mitigating factors were not the sole ones to be considered. Moreover, one juror did, in fact, find an additional mitigating circumstance not listed on Form 2. Upon

review, the trial court properly relied upon *Dansby* and *Sheridan*, and did not err in submitting the standard form to the jury.

█ Finally, Appellant argues that (1) it is not enough to simply allow a defendant to present mitigating factors, and (2) the effective consideration of the type of individualized mitigating factors required in death-penalty cases is not adequately facilitated by the mere submission of Form 2. This is essentially a policy argument made as a means to persuade this court to require trial courts to submit individualized mitigating circumstances instructions, effectively overruling prior precedent to the contrary. As stated above, our prior cases remain good law, and Appellant has not met the high burden of overruling precedent. *See McGhee*, 334 Ark. 543, 975 S.W.2d 834.

### IV. Admission of Photographs

Appellant's fourth argument is that the trial court erred in admitting State's Exhibits 23 and 24, which were photographs of the victim at the hospital, because that evidence was cumulative and its probative value was substantially outweighed by the danger of unfair prejudice. Specifically, Appellant asserts that the trial court failed to make the required analysis as to whether the danger of unfair prejudice substantially outweighed the photographs' probative value.[3]

Our standard when reviewing the admission of photographs is well settled. As with other matters pertaining to the admissibility of evidence, the admission of photographs is a matter left to the sound discretion of the trial court, and we will not reverse absent an abuse of that discretion. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001). When photographs are helpful to explain testimony, they are ordinarily admissible. *Id*. Moreover, the mere fact that a photograph is inflammatory or is cumulative is not, standing alone,

---

[3] At a pretrial hearing, the State sought to have Exhibits 23 and 24, then labeled Exhibits 5 and 6 respectively, admitted into evidence. Appellant raised an Ark. R. Evid. 403 objection, arguing that the photographs were highly prejudicial and did not illuminate anything that could not be covered with other evidence. The trial court reserved ruling with regard to these photographs until it heard the testimony at trial. On appeal, the State argues that the trial court did not expressly reach the relevancy and prejudice claim when admitting Exhibits 23 and 24; however, upon review Appellant renewed his objections on the same motions, and the trial court admitted the photographs over these objections. Thus, the issue is preserved for review.

sufficient reason to exclude it. *Id.* Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. *Id.* Additional acceptable purposes are to show the condition of the victim's body, the probable type or location of the injuries, and the position in which the bodies were discovered. *Id.* Finally, an inflammatory or gruesome photograph should only be excluded if it is without any valid purpose. *Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001).

Both photographs at issue are color photographs of the victim taken at the hospital. Exhibit 23 shows multiple stab wounds to the back side of the victim from her mid back down towards her buttocks. The second photograph, Exhibit 24, shows the victim lying on her back and depicts a very large opening to the right side of her chest as well as other wounds to her chest and arm. Appellant argues that both Exhibits 23 and 24 are gruesome, inflammatory, and prejudicial. He contends that they were offered solely to inflame and prejudice the jury.[4] Thus, he concludes that the trial court abused its discretion when it failed to weigh prejudice versus probative value and allowed these photographs into evidence.

Appellant's argument is without merit. Both photographs were introduced during the testimony of Detective Franklin Snell, of the Fort Smith Police Department, who was sent to the hospital from the crime scene to take pictures of the victim's body. Following Appellant's objections, the trial court stated that it had seen these photographs many times, and found that the photographs do enable the jury to better understand the testimony and show the nature and extent of the wounds, the condition of the body, and the type and location of the injuries. Moreover, in admitting Exhibits 23 and 24 into evidence, the trial court found that they corroborated Detective Snell's testimony as to exactly what he did. Upon review, the trial court gave a specific basis for

---

[4] Appellant also argues that other photographs, State's Exhibits 25 and 29 respectively, show the same wounds in a less inflammatory way. He did not raise this alternative picture argument below, therefore, we cannot now address it. *See Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006) (holding that this court cannot address arguments on appeal that were not raised before the trial court).

its ruling and it is clear that it engaged in the kind of balancing required under Rule 403. Therefore, the trial court did not abuse its discretion in allowing the photographs to be admitted.

### V. Constitutionality of the Death Penalty

Appellant's fifth argument is that the trial court erred when it allowed Appellant to be charged with capital murder, under section 5-10-101, in violation of the Eighth Amendment of the United States Constitution and the Arkansas Constitution. Essentially, Appellant's argument is a challenge to the constitutionality of the death penalty hinging on his assertions that (1) the death penalty is unjustified as a means for achieving any legitimate government purpose, and therefore excessive, because no legitimate penal purpose is served by the execution, which is not more effectively and efficiently served by life imprisonment; (2) the Arkansas death-penalty statute, as applied, violates the Eighth and Fourteenth Amendments of the United States Constitution because it results in the arbitrary and capricious death of only a few individuals without any basis for distinguishing those cases in which the death penalty is imposed from the many in which it is not; and (3) the death penalty violates article 2, section 9 of the Arkansas Constitution because lethal injection, on its face, is an unusual punishment. Thus, Appellant concludes that "the application of the death penalty at this stage in our society is barbarous and shocks the moral sense of the community" such that this court should overrule *Graham v. State*, 253 Ark. 462, 486 S.W.2d 678 (1972) (holding that the death penalty does not constitute cruel and unusual punishment), because of "our society's changing standards of decency and expectation that the State should not kill its citizens by injecting them with toxic, life-ending drugs."

■ Upon review, we cannot reach Appellant's argument because it is unsupported by sufficient citation to legal authority. We have held, even in capital cases, that where the party fails to cite to authority or fails to provide convincing argument, we will not consider the merits of the argument. *See, e.g., Armstrong*, 366 Ark. 105, 233 S.W.3d 627; *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004).

### VI. Victim-Impact Evidence

Appellant's final argument for reversal is that the trial court abused its discretion in admitting victim-impact evidence during the sentencing phase because, under Arkansas law, such evidence is irrelevant in capital-murder cases. While Appellant recognizes that

we have approved the admission of victim-impact evidence in capital-murder trials under Ark. Code Ann. § 5-4-602(4) (Repl. 1997), in accordance with *Payne v. Tennessee*, 501 U.S. 808 (1991), he argues that the evidence is irrelevant and inadmissible because it is not an aggravated circumstance that may be used to determine the punishment for capital murder. Specifically, he argues that evidence must be relevant to some issue properly presented to the jury before it can be admitted and that the impact of the crime on the victim's family simply has no bearing on the factors Arkansas juries must consider in making a punishment decision in a death-penalty case.

As stated above, matters pertaining to the admissibility of evidence are left to the sound discretion of the trial court, and we will not reverse such a ruling absent an abuse of that discretion. *McEwing v. State*, 366 Ark. 456, 237 S.W.3d 43 (2006). Furthermore, this court will not reverse absent a showing of prejudice, as prejudice is not presumed. *Id.*

Appellant's argument is without merit, as we have repeatedly held that victim-impact evidence is admissible. *See, e.g., Anderson v. State*, 367 Ark. 536, 242 S.W.3d 229 (2006); *Johnson v. State*, 356 Ark. 534, 157 S.W.3d 151 (2004); *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998). Specifically, victim-impact evidence is not an additional aggravating circumstance nor does it violate the statutory weighing process set out in Ark. Code Ann. §§ 5-4-603 –605 (Repl. 1997 & Supp. 2003). *See Johnson*, 356 Ark. 534, 157 S.W.3d 151; *Noel*, 331 Ark. 79, 960 S.W.2d 439. Victim-impact evidence is "relevant evidence which informs the jury of the toll the murder has taken on the victim's family" and "[s]uch evidence has been sanctioned by the Supreme Court as relevant in *Payne*, [501 U.S. 808], and specifically by the Arkansas General Assembly in Act 1089." *Noel*, 331 Ark. at 93, 960 S.W.2d at 446-47. Moreover, "[a]s a safeguard against excessive victim-impact evidence, the Court observed in *Payne*, [501 U.S. 808], that when such evidence is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause provides a mechanism for relief." *Id.* at 93, 960 S.W.2d at 447.

Despite Appellant's argument to the contrary, the Arkansas General Assembly has enacted the victim-impact statute and stated that it is relevant to the sentencing process. *Id.* Additionally, this is not a situation where the testimony of the victim's father, two sisters, and one of her children was unduly prejudicial but rather was relevant to show the impact her death had on her

family. This is precisely the purpose envisioned by the General Assembly in enacting section 5-4-602(4). Thus, the trial court did not abuse its discretion in admitting victim-impact evidence during Appellant's sentencing because such evidence is relevant under the Arkansas capital-murder-sentencing process.

## VII. Rule 10(b)

Arkansas Rule of Appellate Procedure – Criminal 10(b) provides, in pertinent part, that we shall consider the following issues in conducting a mandatory review of death sentences imposed on or after August 1, 2001:

(i) pursuant to Rule 4-3(h) of the Rules of the Supreme Court and Ark. Code Ann. § 16-91-113(a), whether prejudicial error occurred;

(ii) whether the trial court failed in its obligation to bring to the jury's attention a matter essential to its consideration of the death penalty;

(iii) whether the trial judge committed prejudicial error about which the defense had no knowledge and therefore no opportunity to object;

(iv) whether the trial court failed in its obligation to intervene without objection to correct a serious error by admonition or declaring a mistrial;

(v) whether the trial court erred in failing to take notice of an evidentiary error that affected a substantial right of the defendant;

(vi) whether the evidence supports the jury's finding of a statutory aggravating circumstance or circumstances; and

(vii) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Upon review, no reversible error exists based upon the issues enumerated under Rule 10. Furthermore, the record has been reviewed in this case under Ark. Sup. Ct. R. 4-3(h), and no reversible error has been found.

Affirmed.