2012 Ark. App. 74

**Quincy Jay PLESSY, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–814.**

Court of Appeals of Arkansas.

Jan. 18, 2012.

Coy Joe Rush Jr. and Mark J. Johnson, Paris, for appellant.

Dustin McDaniel, Atty. Gen., Brad Newman, Little Rock, for appellee.

WAYMOND M. BROWN, Judge.

This is an appeal from a Sebastian County jury trial finding the appellant, Quincy Jay Plessy, guilty of first-degree

murder and committing a felony with a firearm. Plessy argues on appeal that there was insufficient evidence to support his conviction. He also contends that the trial court erred by allowing the prosecution to amend the criminal information on the eve of trial; by not granting his motion for a mistrial after prejudicial misconduct by the prosecution; by finding that statements by the victim were admissible as a dying declaration; and by allowing the introduction of prejudicial photographs of the victim's body over defense objection. We affirm on all points.

### |₂*Factual Background*

On November 30, 2009, Thomas Xavier Clayton was found by witnesses at an intersection in Fort Smith with multiple gunshot wounds after falling or being thrown from the back seat of a maroon four-door vehicle. Clayton was transported to St. Edward's Hospital, where he died less than an hour later. Appellant Quincy Jay Plessy was arrested on December 4, 2009, and was charged with one count of first-degree murder by information filed on December 8, 2009. On March 1, 2011, the State filed notice that it intended to amend the information to include an enhancement for use of a firearm during the commission of a felony, pursuant to Ark.Code Ann. § 16–90–120. The enhancement would allow up to fifteen additional years to be added to Plessy's sentence.[1] The amended information was filed on April 13, 2011.

Trial was held on April 18–20, 2011, and a jury convicted Plessy of first-degree murder and sentenced him to 360 months in the Arkansas Department of Correction with a consecutive five-year firearm enhancement, for a total sentence of 420 months. The judgment and commitment order was entered on April 21, 2011, and Plessy timely filed a notice of appeal.

### |₃*Discussion*

### I. *Sufficiency–of–the–Evidence Argument Not Preserved for Appeal*

■ Plessy contends that the trial court erred in allowing a felony conviction because the testimony of his accomplice, Jamal Gibson, was not corroborated at trial,[2] and that there was therefore insufficient evidence to convict him of first-degree murder. Although Plessy has raised this as his last point of appeal, double-jeopardy considerations require us to review a challenge to the sufficiency of the evidence first.[3] However, we are precluded from considering a sufficiency-of-the-evidence argument because it was not preserved for appeal. At the close of the State's case-in-chief, defense counsel for the appellant made this motion: "Also, move for a directed verdict in this case saying that the evidence does not rise to [a] sufficient level to take this case to the jury." The court denied the motion. At the close of all evidence, counsel renewed the motion by stating, "I'd also like to move at this time for a directed verdict in this case, *directed verdict of a [sic] acquittal.*" The trial court again denied the motion.

■ Arkansas Rule of Criminal Procedure 33.1(a) (2011) requires that a motion for a directed verdict specify how the

---

1. The certificate of service certified that the notice had been faxed to defense counsel.

2. Under Ark.Code Ann. § 16–89–111(e)(1)(A) (Repl.2006), a conviction cannot stand based on an accomplice's testimony unless that tes-

timony is corroborated by other evidence tending to connect the defendant with the commission of the offense.

3. *Boldin v. State,* 373 Ark. 295, 283 S.W.3d 565 (2008).

evidence is deficient.[4] A party is bound by the scope and nature of his directed-verdict motion and cannot change the grounds on appeal.[5] An appellant's failure to raise the issue of accomplice corroboration in his directed-verdict motion precludes appellate review of that issue.[6] Because Plessy's directed-verdict motion did not specify any deficiency in the State's proof, we cannot consider his claim that the evidence at trial was insufficient to convict him.

## II. *Trial Court Did Not Err in Allowing Amendment of Information*

■ Plessy argues that the trial court erroneously allowed the State to amend the information as to the first-degree-murder charge on the morning of trial. He contends that, although the State filed notice that the information would be amended to include a felony-firearm enhancement,[7] the notice did not indicate that the underlying murder charge would be changed, and that such a change unfairly prejudiced him.

The initial information filed on December 8, 2009, listed the charge as murder in the first degree pursuant to Ark.Code Ann. § 5–10–102. The area of the information form allotted for a description of the charge alleged that Plessy

did unlawfully and feloniously and acting alone or with one (1) or more other persons, committed or attempted to commit a felony and in the course of and in furtherance of the felony or in immediate flight from the felony, the person or an accomplice caused the death of Thomas Xavier Clayton under circum-

stances manifesting extreme indifference to the value of human life, **OR IN THE ALTERNATIVE, did unlawfully, feloniously, and with the purpose of causing the death of Thomas Xavier Clayton, they caused the death of Thomas Xavier Clayton** against the peace and dignity of the State of Arkansas.

(Emphasis added.) On March 1, 2011, the State filed notice that it intended to amend the information to include a felony-firearm enhancement, but did not indicate any intent to amend the underlying charge of first-degree murder. At a hearing on April 8, 2011, ten days before trial, the court asked if the information had been amended. The prosecutor said that it had not, but that counsel for Plessy would be provided a copy of the amended information that day. Plessy claims on appeal that he moved for a continuance at that time, but the record does not bear this out. The relevant exchange between the circuit court, the prosecutor, and defense counsel at the pretrial hearing was as follows:

COURT: Now the State has filed a motion to file a felony firearm enhancement and the information has been amended. Hasn't it, Mr. Wagoner?

PROSECUTOR: Well actually not yet, your Honor. I did fax notice. I will give a copy to Mr. Rush today.

COURT: I will grant the State's motion in limine to exclude decedent's criminal record and that I do not think it would be relevant in this trial.

DEFENSE COUNSEL: Thank you, your Honor, note my objection to this late motion. Based on that motion and the

---

4. *E.g., Grady v. State,* 350 Ark. 160, 85 S.W.3d 531 (2002).

5. *Tillman v. State,* 364 Ark. 143, 217 S.W.3d 773 (2005).

6. *Id.*

7. Plessy does not challenge the felony-firearm enhancement itself.

fact that I have not had a chance to look at it, research it, I would move for a continuance for the purpose of the record.

The amended information filed on April 13, 2011, again listed the underlying charge of murder in the first degree pursuant to Ark.Code Ann. § 5–10–102, and added a charge for felony with a firearm pursuant to Ark.Code Ann. § 16–90–120. In the area allotted for a description of the charge, the information set forth only the alternative charge from the original information, alleging that Plessy "did unlawfully and with the purpose of causing the death of Thomas Xavier Clayton ... caused the death of Thomas Xavier Clayton against the peace and dignity of the State of Arkansas."

At the beginning of trial on April 18, 2011, as the court prepared to read the information to the jury, the prosecutor approached the bench and provided the court with a copy of the amended information. Counsel for Plessy objected to the timing of the amendment, but did not object to any particular change made. The prosecutor replied that the State had the right to amend the information before trial, and stated that the felony-firearm enhancement had been added pursuant to the written notice that was filed on March 1, 2011. The court denied Plessy's objection and the trial proceeded.

Plessy argues on appeal that the trial court erred in not granting his motion for a continuance made at the April 8, 2011 hearing. However, we are not persuaded that the motion referred to the State's notice to amend the information; rather, it immediately followed and appears to refer to the State's motion in limine regarding the victim's criminal record. At trial, Plessy objected that the amended information was filed "late in the case," but did not mention a particular amendment or how it unfairly prejudiced him. The only amendment to the information discussed was the felony-firearm enhancement.

■■ It is well settled that arguments not raised at trial will not be addressed for the first time on appeal.[8] An appellant may not change the grounds for an objection on appeal, but is limited by the scope and nature of the objections and arguments presented at trial.[9] Accordingly, Plessy's argument that the amended information prejudicially changed the nature of his murder charge is not preserved for appeal. Nevertheless, the argument Plessy did preserve—that the amended information was filed too late—will require us to address whether the amended information impermissibly changed the nature of the murder charge against him.

■■ The State is entitled to amend the information at any time prior to the case being submitted to the jury as long as the amendment does not change the nature or degree of the offense charged.[10] A comparison of the original information filed on December 8, 2009, and the amended information filed on April 13, 2011, shows that the original information includ-

8. *Nelson v. State*, 84 Ark.App. 373, 141 S.W.3d 900 (2004).

9. *Tillman, supra.*

10. *Hill v. State*, 370 Ark. 102, 257 S.W.3d 534 (2007). In *Hill*, our supreme court held it was proper for the State to amend the information after the close of the State's case-in-chief. Hill was originally charged with three counts of kidnapping under Ark.Code Ann. § 5–11–102(a)(4), which describes kidnapping for the purpose of inflicting physical injury. The amended information added allegations that the kidnappings were for the purpose of terrorizing another or facilitating the commission of a felony, pursuant to other subsections of the statute.

ed the charge of first-degree felony murder[11] and, in the alternative, first-degree murder.[12] Because the charge Plessy was tried for was contained in the original information filed in 2009, we fail to see how he was unfairly surprised or otherwise prejudiced by the amended information and find no error in the trial court allowing the State to amend the information the week before trial.

### |₈III. *Trial Court Did Not Err in Denying Motion for Mistrial*

■ Roy Smith, a firefighter who was a first responder to the scene, testified that when he asked Thomas Clayton who shot him, Clayton responded, "Q." Smith then confirmed with Brad Turner, the other first responder, that Clayton said "Q." Turner testified that Clayton said, "all I know is Q" when he was asked who had shot him. At trial, several witnesses for the State testified that Plessy goes by the nickname "Q," and Plessy testified that although he did not personally "go by Q," other people, including Clayton, did call him that. During cross-examination by the State, the prosecutor showed Plessy a letter and asked him if he wrote it. Plessy said that he did not remember the letter. The prosecutor told him that the letter was from his school file, but Plessy again denied that he wrote the letter and said he did not remember it or know the person to whom it was addressed. When the prose-

cutor asked Plessy how the letter was signed, defense counsel requested a bench conference. At the bench, the court told the prosecutor not to ask further questions about the letter unless Plessy admitted that he wrote it.

Back in open court, the prosecutor again asked Plessy how the letter was signed, in contravention of the court's instruction. Before counsel could object, Plessy replied, "Q." At a second bench conference, defense counsel moved for a mistrial because the prosecutor continued to ask about the letter after the court told him not to. The court denied the motion on the grounds that Plessy had already testified that he never saw the letter, and said |₉that defense counsel would be allowed to re-establish that testimony on redirect examination[13] in lieu of giving a cautionary instruction.[14] Plessy argues on appeal that the prosecutor engaged in misconduct by continuing to ask about the letter, and that the trial court erred in denying his motion for a mistrial.

■ A mistrial is an extreme remedy that should be granted only when the error is beyond repair and cannot be corrected by any curative relief.[15] An admonition to the jury from the trial court usually cures a prejudicial statement unless the statement is so patently inflammatory that justice cannot be served by continuing the trial,[16] or when the funda-

---

11. Ark.Code Ann. § 5–10–102(a)(1)(A) & (B) (2006).

12. Ark.Code Ann. § 5–10–102(a)(2) (2006).

13. The court actually said that defense counsel could address the issue on "cross," but as Plessy was testifying on his own behalf and this issue arose during the State's cross-examination, defense counsel's next opportunity to question Plessy would be on redirect examination.

14. Whether a curative instruction should have been provided is not an issue on appeal because Plessy did not request a curative instruction or otherwise raise the issue below. *Nelson, supra.*

15. *Brown v. State,* 74 Ark.App. 281, 47 S.W.3d 314 (2001), *aff'd,* 347 Ark. 308, 65 S.W.3d 394 (2001).

16. *Walker v. State,* 91 Ark.App. 300, 210 S.W.3d 157 (2005).

mental fairness of the trial has been manifestly affected.[17] In reviewing a mistrial motion, the appellate court must look at all developing circumstances that surround an incident to determine whether manifest abuse of discretion occurred.[18]

We do not find that Plessy's statement that the letter was signed "Q," or the prosecutor's action in eliciting that testimony, resulted in the level of prejudice that would merit a mistrial. There was evidence before the jury that Plessy was known by the nickname "Q," including the testimony of at least three State witnesses and Plessy's own testimony that some people, including the victim Thomas Clayton, called him "Q." As such, the statement does not constitute prejudice severe enough to render the trial fundamentally unfair. We find no abuse of discretion in the trial court's denial of Plessy's motion for a mistrial.

## IV. Trial Court Did Not Err in Admitting Statement as a Dying Declaration

Arkansas Rule of Evidence 802 prohibits the admission of hearsay except as provided by law or by the rules of evidence. Under the hearsay exception found in Rule 804(b)(2), however, hearsay from an unavailable declarant, such as a deceased declarant,[19] is not excluded if it is "[a] statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death." The trial court determines whether a statement is admissible as a dying declaration, and we will not reverse that determination absent an abuse of discretion.[20]

Dying declarations are deemed inherently trustworthy.[21] The principal consideration upon which such statements are admitted is that a person who realizes that death is inevitable as a result of the injury inflicted speaks with solemnity and will not resort to fabrication in order to unjustly punish another.[22] A sense of imminent death need not be shown by the declarant's express words alone; it can be supplied by inferences fairly drawn from his condition.[23]

Plessy filed a pretrial motion to exclude Thomas Clayton's response, "Q," when first responder Roy Smith asked who shot him, arguing that the testimony would show that Clayton gave different responses to the two witnesses who discovered him before Smith arrived. At a hearing on the motion, the trial court heard Smith's testimony on this matter and on Clayton's condition when he was discovered. Smith testified that Clayton had multiple wounds, was in distress and had no feeling in his legs, and began to go in and out of consciousness shortly after he iden-

---

17. King v. State, 361 Ark. 402, 206 S.W.3d 883 (2005).

18. Boyd v. State, 318 Ark. 799, 889 S.W.2d 20 (1994).

19. E.g., Simmons v. State, 95 Ark.App. 114, 234 S.W.3d 321 (2006).

20. Hammon v. State, 338 Ark. 733, 2 S.W.3d 50 (1999).

21. Grant v. State, 357 Ark. 91, 161 S.W.3d 785 (2004).

22. Id.

23. Boone v. State, 282 Ark. 274, 668 S.W.2d 17 (1984); see also Simpkins v. State, 48 Ark. App. 14, 889 S.W.2d 37 (1994) (holding that, based on the obvious severity of the wound, combined with the victim's almost immediate collapse and inability to breathe, trial court did not abuse its discretion in admitting testimony about victim's statement).

tified "Q" as the person who shot him. Smith also testified that when he heard Clayton say "Q," he immediately confirmed what Clayton had said with Brad Turner. The trial court denied Plessy's motion and ruled that the statement was admissible as a dying declaration even if Clayton made differing statements to other witnesses. At trial, Roy Smith gave the same testimony, and Brad Turner testified that he too heard Clayton say "Q." The medical examiner, Dr. Daniel Konzelmann, testified that Clayton had sustained eight gunshot wounds, including one that penetrated his aorta, and that four bullets were inside his body at the time of the autopsy. Witness testimony at trial also indicated that Clayton died less than an hour after the shooting occurred.

 Plessy argues that the trial court should have excluded Clayton's "Q" statement to Smith and Turner because Clayton gave conflicting statements to witnesses, thus rendering the statement inherently untrustworthy. This argument is without merit. At trial, one witness, Ty Adams, testified that he saw Clayton fall out of the car and went to assist him. When he asked Clayton who threw him out of the car, Clayton said he did not know. Adams then asked if he knew who he had been with in the car, but Clayton replied only that he had been shot. Adams testified that Clayton appeared to be in shock and not able to communicate. Another eyewitness, Brian Johnson, testified that when he asked Clayton who shot him, Clayton just moaned. Subsequently, when firefighters Roy Smith and Brad Turner arrived, Clayton managed to say "Q" when Smith

asked who had shot him. The record does not show inconsistency or contradiction in his responses to questions; rather, it indicates that Clayton was mortally injured and struggling to communicate. Moreover, it is the province of the jury to determine the reliability of identification testimony[24] and to weigh any inconsistencies in evidence;[25] neither of those concerns affect the threshold question of whether the testimony is admissible.

Citing *Thompson v. State*,[26] Plessy argues that Clayton's one-word statement, "Q," should have been ruled inadmissible because it did not specifically describe the cause and circumstances of his death. However, it is sufficient for a dying declaration to concern or refer to the cause or circumstances of what the declarant believed to be his impending death.[27] Clayton's statement was made in response to the question of who shot him. As such, it clearly referred to and concerned the circumstances and cause of his impending death, and qualifies as a dying declaration. The trial court did not abuse its discretion in denying Plessy's motion in limine and allowing the statement into evidence at trial.

### V. Trial Court Did Not Err in Admitting Photographs

 Plessy's final argument on appeal is that the trial court erred in allowing the State to introduce nine photographs of Clayton's body on the grounds that they had little probative value, were prejudicial, and were used only to inflame the jurors. We disagree.

---

24. *Fitch v. State*, 2011 Ark. App. 663, 2011 WL 5176474 (citing *Gray v. State*, 318 Ark. 601, 888 S.W.2d 302 (1994)).

25. *Id.* (citing *Butler v. State*, 2011 Ark. App. 621, 2011 WL 4824300).

26. 306 Ark. 193, 813 S.W.2d 249 (1991).

27. *See* Ark. R. Evid. 804(b)(2); *Thompson, supra.*

The admission of photographs is a matter left to the sound discretion of the trial court, and we will not reverse absent an abuse of discretion.[28] When photographs are helpful to explain testimony, they ordinarily are admissible.[29] The mere fact that a photograph is inflammatory or gruesome is not, standing alone, sufficient reason to exclude it.[30] Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issues, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony.[31] Other acceptable purposes include showing the condition of the victim's body, the probable type or location of the injuries, and the position in which the body was discovered.[32]

At trial, the State sought to admit two of fourteen photographs of Clayton taken by Detective Ronald Scamardo in Clayton's hospital room minutes after he was pronounced dead, and seven of forty-two photographs taken at the medical examiner's office. Detective Scamardo testified that he took the photos to show that Clayton was deceased and to show the wounds he received. Dr. Daniel Konzelmann, the medical examiner who autopsied Clayton's body, used the photographs to assist with his testimony regarding cause of death and the location, characteristics, and effect of Clayton's eight gunshot wounds. The number of photographs admitted was not excessive, and the photographs were used to show the condition of Clayton's body and the type and location of his injuries, to enable witnesses to testify more effectively, and to help the jury better understand testimony concerning Clayton's wounds and cause of death. Accordingly, the trial court did not err in admitting them into evidence.

Affirmed.

GRUBER and MARTIN, JJ., agree.

---

28. *Springs v. State*, 368 Ark. 256, 244 S.W.3d 683 (2006).

29. *Id.*

30. *Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987).

31. *Springs, supra.*

32. *Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000).