Cite as 2020 Ark. App. 367

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-19-852

| | |
|---|---|
| OSCAR CECILIO PEREZ | **Opinion Delivered** September 2, 2020 |
| APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-18-886] |
| V. | |
| STATE OF ARKANSAS | HONORABLE ROBIN F. GREEN, JUDGE |
| APPELLEE | |
| | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Oscar Cecilio Perez was convicted by a jury of Class Y felony kidnapping, first-degree battery, possession of firearms by certain persons, aggravated assault, and first-degree terroristic threatening. His sentences were enhanced because he employed a firearm in the commission of a felony and was a habitual offender. Perez appeals, arguing that (1) there is insufficient evidence to support the Class Y felony kidnapping conviction because he released the victim alive and in a safe place, and (2) the circuit court abused its discretion in admitting improper prior-bad-act evidence in violation of Arkansas Rule of Evidence 404(b). We affirm.

For its charge of Class Y felony kidnapping, the State alleged that Perez unlawfully restrained Neryda Gonzales without her consent and substantially interfered with her liberty with the purpose of terrorizing her and causing physical injury to her. *See* Ark. Code Ann.

§ 5-11-102(a)(4) and (6) (Repl. 2013). Kidnapping is a Class Y felony, unless the defendant shows by a preponderance of the evidence that the defendant voluntarily released the person alive and in a safe place prior to trial, which makes it a Class B felony. *See Rickman v. State*, 2020 Ark. 138, 597 S.W.3d 622; Ark. Code Ann. § 5-11-102(b). The offense is still kidnapping, even when there is a voluntary, safe release of the victim. *Barber v. State*, 2016 Ark. 54, 482 S.W.3d 314.

On appeal, Perez does not contest that there is sufficient evidence that he kidnapped Gonzalez. He concedes that the evidence at trial showed that Perez took Gonzalez against her will from her home in Rogers; held her at gunpoint for hours; moved her place to place (Bella Vista to Fayetteville to Springdale); shot her in the leg in the course of the kidnapping causing her inability to walk due to the bullet in her leg; and ultimately left her at a Springdale residence where she had never before been, with people unfamiliar to her. This was a methamphetamine-fueled event over the course of a day or two during which Perez threatened to kill Gonzalez. The jury was instructed that if it found Perez guilty of kidnapping, it should decide whether he had proved by a preponderance of the evidence that he had released Gonzalez alive and in a safe place. The jury found that Perez had not met his burden of proof. Nonetheless, Perez argues on appeal that he released the victim alive and in a safe place, so any punishment should have been imposed under a Class B felony range instead of the Class Y felony range.

As a threshold matter, we must determine whether this argument is preserved for our review. A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Halliburton v. State*, 2020 Ark. 101, 594 S.W.3d 856. At the conclusion of the

2

State's case, Perez's attorney moved for directed verdict on the kidnapping charge by arguing that the State had not proved beyond a reasonable doubt that Perez unlawfully restrained Gonzalez by interfering with her liberty with the purpose of terrorizing and causing physical injury to her. Perez did not move for directed verdict on whether he had proved by a preponderance of the evidence that he released Gonzalez alive and in a safe place.

Appellant never argued to the circuit court that the evidence presented by the State was insufficient to prove Class Y felony kidnapping as a matter of law and that only Class B felony kidnapping could be considered by the jury. In the absence of doing so, appellant failed to preserve the argument for appellate review. *See Sweet v. State*, 2011 Ark. 20, at 13, 370 S.W.3d 510, 520 (holding that Sweet "never argued below that the evidence presented by the State proved Class B felony kidnapping but not Class Y. Pursuant to our case law, we decline to address that specific argument because it was not preserved for our review.") Even had the issue been preserved for our review, "[i]t is a question of fact for the jury to decide which of the kidnapping felonies apply in a particular case." *See Reynolds v. State*, 2020 Ark. 174, at 11, 599 S.W.3d 120, 128. The jury here could have reasonably found that Perez failed to carry his burden to establish that he ultimately left the kidnapping victim "in a safe place" when he left Gonzalez with a debilitating leg wound in an unfamiliar residence with unfamiliar people.

Perez also argues that the circuit court abused its discretion and committed reversible error in permitting the State to elicit testimony from two witnesses that constituted improper character evidence in violation of Arkansas Rule of Evidence 404(b). A contemporaneous

objection at trial is not required when, as here, the objection was made in the form of a specific motion in limine and was overruled. *See Johnson v. State*, 2013 Ark. 494, 430 S.W.3d 755. The admission or rejection of testimony will not be reversed on appeal absent a manifest abuse of discretion and a showing of prejudice to the defendant. *Watts v. State*, 2020 Ark. App. 218, 600 S.W.3d 618; *Gonzales v. State*, 2019 Ark. App. 600, 589 S.W.3d 505.

Arkansas Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence is not admissible under Rule 404(b) if the purpose for offering it is to prove prior bad conduct. *Watts*, *supra*. Although evidence of other crimes or bad acts may be independently relevant and therefore admissible under Rule 404(b), the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403. This court gives considerable leeway to circuit courts when determining whether a prior bad act is sufficiently similar to the crime charged to warrant admission under Rule 404(b). *Watts*, *supra*.

Here, Perez filed a pretrial motion in limine to exclude, among other things, portions of testimony that the State expected to elicit from Mandy Jeffries and Brooke Rust. The State asserted that approximately two weeks after Perez had kidnapped Gonzalez, he acted in a similarly paranoid, threatening manner and brandished a gun at other women. Their expected testimony was intended to establish Perez's plan, motive, or absence of mistake or

4

accident, in line with the purposes permitted by Rule 404(b). These other acts led to law enforcement being called, Perez fleeing from law enforcement, and Perez ultimately being arrested for kidnapping Gonzalez. Defense counsel acknowledged that the circumstances around Perez's arrest were relevant and appropriate, but not the prejudicial allegations by these witnesses of bad behavior that Perez exhibited before law enforcement arrived. Defense counsel wanted to exclude evidence of Perez's alleged paranoia, taking phones, brandishing a gun, threatening violence, and any evidence that essentially would show another kidnapping of a woman. The circuit court ruled that Perez's similar behavior two weeks after the kidnapping was relevant, its prejudice was outweighed by the probative value, and that it went to Perez's plan, knowledge, and lack of accident or mistake.

At trial, there was detailed evidence of what happened over the days in early April 2018 when Perez kidnapped Gonzalez. Perez was with Gonzalez at her house, they had been using methamphetamine, and Perez was very agitated, paranoid, and angry. Perez fired his gun in Gonzalez's home, he took her against her will to several places in northwest Arkansas, he shot her in the leg while they were in transit and threatened to kill her, and he eventually left her at an unfamiliar residence. Much of Perez's anger and paranoia was directed toward his infant son's mother, Marlene Saldierna, with whom he was upset for not letting him see his son. Perez believed that Gonzalez was part of the problem and was trying to "set him up" with the police.

Brooke Rust testified in relation to the kidnapping of Gonzalez. Rust was living in Bella Vista with her boyfriend Gary when, on a night in early April, Perez and Gonzalez showed up at Gary's mother's residence. Rust testified that Perez had a weapon on him,

5

he was angry and paranoid, and he ordered Gonzalez around. Gonzalez had been crying and appeared to have been hit in the head; Gonzalez apparently left blood on the kitchen table where she had been sitting. Rust said that Perez seemed to be the one in charge that night, and she described Perez generally as "intimidating," "scary," and "a very angry, out-there person." She said that Perez was always paranoid and that she had never seen him without a gun. Perez and Gonzalez left after a while. (Gonzalez was shot after they left this residence.)

Toward the end of April, Rust and her boyfriend were living in a studio apartment on the back of Jeffries's residence, and Perez had been staying with Jeffries. On the night of April 29, Perez showed up with a woman (Marlene Saldierna) and a little boy. Perez was mad and telling Saldierna she was not taking the baby with her, but Rust said he was always telling people what to do and it was common for people to listen to him. Perez then told Rust and Jeffries to go for a walk, so they left. Rust did not indicate that Perez was threatening, that he actually had a gun, that he took anyone's cell phone, or that he held anyone hostage. Rust only reiterated her belief that Perez was a scary person who always had a gun.

Appellant has failed to demonstrate reversible error in permitting Rust to testify to the events shortly before Perez's arrest. As Perez presents it, the State did not elicit the expected prejudicial testimony from Rust about Perez's behavior in late April: being paranoid, being threatening, and using a gun to intimidate and strike fear into other women. Thus, there could be no resulting prejudice from the circuit court's ruling on the pretrial motion in limine. As to the testimony that was actually elicited from Rust at trial about

6

Perez's behavior in late April, Perez lodged no objection, so there is no evidentiary ruling for us to review.

Moving to Jeffries's testimony, Perez asserts that she provided "the bulk" of the objectionable 404(b) testimony but that her testimony was not as described in the pretrial hearing. Jeffries came back to her home one night in late April to find Perez there, her home was in disarray, and Perez was acting as if someone were after him, but Perez did not hold anyone at gunpoint. Jeffries said she never saw Perez use drugs, and she did not ask him to leave. Jeffries did, however, testify about Saldierna coming over with the baby, Perez bossing her around and telling her she could leave but not take his son, and Perez being physically abusive with Saldierna. This ultimately led Jeffries to leave the residence, and the police were called. Defense counsel wanted to exclude evidence of Perez's alleged paranoia, taking phones, holding people at gunpoint, and any evidence that essentially would show another kidnapping of a woman, and the State did not present such evidence through Jeffries. The defense was thus successful in excluding the testimony it wanted excluded, so Perez fails to present reversible error in the circuit court's pretrial ruling. Because Jeffries's testimony did not embrace the objectionable matters raised in the motion in limine, any argument about her testimony that was not encompassed by the pretrial motion in limine is not preserved for appellate review.

Affirmed.

GRUBER, C.J., and ABRAMSON, J., agree.

*Robert M. "Robby" Golden*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.

7