Cite as 2024 Ark. App. 555

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-24-126

|  |  |  |
|---|---|---|
| | | Opinion Delivered November 6, 2024 |
| HARRY BUTLER | | |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CR-21-1117] |
| V. | | |
| | | HONORABLE MARK LINDSAY, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | AFFIRMED |

## MIKE MURPHY, Judge

Appellant Harry Butler appeals his conviction by a Washington County jury of one count of rape against MC1, one count of sexual assault against MC1, and one count of sexual assault against MC2. He was sentenced to consecutive terms of imprisonment totaling thirty-five years. He makes three arguments on appeal: (1) the circuit court improperly ruled that some testimony was excludable under the rape-shield statute; (2) his voir dire was improperly restricted; and (3) the circuit court abused its discretion when it allowed the State to refer to two of its witnesses as "victims" during the trial. We affirm.

In 2021, Butler was arrested and charged with one count of rape and two counts of second-degree sexual assault. Butler filed two pretrial motions. The first was a motion in limine to prevent the State from referring to two of its witnesses as "victims," the second was a motion to admit evidence pursuant to the rape-shield law, codified at Arkansas Code

Annotated section 16-42-101 (Supp. 2023).

At the hearing on the rape-shield motion, trial counsel explained he wanted to get into evidence that when MC1 was interviewed in 2021 at the Children's Safety Center for the allegations against Butler, MC1 mentioned to the interviewer that she and the interviewer had met before—the last time she was at the safety center regarding a different man (someone named Chad). Trial counsel wanted to highlight that, because of the timing of the allegations against Butler, MC1 would have been asked at that earlier interview if anyone else had touched her before, and she would have said no.

Specifically, Butler's counsel wanted to ask MC1 on the stand if she had been interviewed previously by the same caseworker, to which MC1 would reply yes, and counsel would then ask, "Did you review anything about [ ] Butler at that time?" to which she would reply no.

From the bench, the court said:

| THE COURT: | Well, let me ask you this, I don't want to bring out that she was interviewed by the Children's Safety Center. That gets into her personal history. Now, let me ask ~ why couldn't you just say, when was the first time that you ever made this allegation against the defendant, Mr. Butler? |
| --- | --- |
| DEFENSE COUNSEL: | Uh-huh, well, my objective is to bring out that she had the opportunity two-years prior and – |
| THE COURT: | Well, I mean, the purpose of the rape shield statute is to keep out the prior sexual history. Now, in my opinion, first of all, I think it's relevant. I do, I think it's relevant to impeaching the alleged victim. I don't think you need to bring out that she was at the Children's Safety Center because everybody is going to know what the Children's |

Safety Center is.

DEFENSE COUNSEL: May I ask her if she was interviewed by the same person?

THE COURT: That still brings up the fact that, oh, she was in there on an allegation two-years ago or whenever it was. That's what you're not supposed to tell the jury. Because, what happened with Chad is not relevant –

DEFENSE COUNSEL: I agree.

THE COURT: So – and, the whole purpose of the rape shield statute law is to keep people comfortable in coming forward. Now, you haven't convinced me that you couldn't go, well, when was the first time that you ever made this allegation about Harry?

DEFENSE COUNSEL: Yes, sir. But, I would like to be able to bring out that she was interviewed—

THE COURT: Well, I'm sure you would. Because then the jury knows she's made an allegation against some other guy.

DEFENSE COUNSEL: Not necessarily, she might have been interviewed in connection [to] somebody else's complaint. And I don't have to say, were you interviewed by the same lady, or at the Children's Safety Center.

THE COURT: I believe it's relevant but I believe its probative value does not outweigh the prejudice to the victim in this case. You can ask her when the first time was that she –what do you call it? Revealed? Not revealed.

PROSECUTOR: Disclosed?

THE COURT: Disclosed, or there may be another word for it. But we're not going to get into the fact that she has previously been to the Children's Safety Center. . . .

DEFENSE COUNSEL: I didn't intend to bring up that she was interviewed at the Children's Safety Center. I would just want to bring up

3

|                    |                                                                                                                                                                                                                                                                                     |
| ------------------ | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                    | that she was interviewed or gave a statement two-years prior.                                                                                                                                                                                                                         |
| THE COURT:         | Well, when you're giving a statement there is obviously something criminal [afoot]. So, I'm not going let you do anything, it's too prejudicial to the victim. You can accomplish the same -- you can impeach her by saying when was the first time that you revealed, accused, whatever, Harry Butler of inappropriately touching you or whatever it is she's accusing him of. |

The relevant portion of the interview transcript was proffered to the court.

Butler's first jury trial was held on June 28, 2023. Just before the start of jury selection, the circuit court addressed Butler's motion to preclude referring to the alleged victims as "victims," explaining:

> Using the word victim, [ ] the State in chambers, you can correct me if I'm wrong, agreed that they were instructing their witnesses not to use the word, victim. However, I informed both sides, and I think the State cited a case, saying that is not prejudicial even if they do. So what I told them is, you know, you might say alleged victim or if the word victim comes out then I probably will not rule that it is prejudicial and I also said, [defense counsel] was free to submit a cautionary instruction at the time, if that occurs. Which I would either read immediately or wait and read it at the end of it.

> So what I told them is, you know, you might say alleged victim or if the word victim comes out then I probably will not rule that it is prejudicial and I also said, [defense counsel] was free to submit a cautionary instruction at the time, if that occurs.

Butler contends that this motion was denied, but it is not clear from the record if that is the case. The first jury trial resulted in a mistrial and the second trial was held October 16–17.

Last, relevant to the issues on appeal, during jury selection for the second trial, defense counsel started to discuss the punishment range for rape. The following took place:

4

| | |
|---|---|
| DEFENSE COUNSEL: | You're about to embark on probably one of the most important and gravest duties of your life. Because the consequences are severe. In Arkansas, the punishment for rape – |
| THE COURT: | Wait a minute, we don't talk about punishment. |
| DEFENSE COUNSEL: | May we approach? |
| THE COURT: | Sure. |
| [At the bench.] | |
| THE COURT: | You cannot mention punishment. |
| DEFENSE COUNSEL: | Your Honor, there's a case directly on point, [*Dillard v. State*,] that says it's error, reversible error to prohibit a defense counsel from stating the range of punishment and ask the jury if they can – |
| THE COURT: | You better show it to me and it better say, in voir dire . . . . This does not say at all . . . in fact, a lower court decision was affirmed. It was affirmed and it said, here's what I take it to mean and this is my ruling, you can ask them if they will consider, if they find him guilty, if they will consider the full -- you can tell them there's going to be a range – |
| DEFENSE COUNSEL: | Right. |
| THE COURT: | -- and will they consider the full range, but we're not getting into this ten to 40-years. |
| DEFENSE COUNSEL: | Not getting into what? |
| THE COURT: | The exact range of punishment, that's my ruling. |
| DEFENSE COUNSEL: | Your Honor . . .you didn't read it far enough, Your Honor. |
| THE COURT: | Yeah, I did. That's my ruling . . . It affirmed the decision of the lower court. I do not have to let you get into the exact range and I'm not going to, that's it, you can appeal |

5

it.

At the trial, MC1 testified that she met Butler when he was dating her grandmother. She testified that Butler touched her inappropriately several times when she was nine, ten, and eleven years old. She came forward in 2022 after she and her cousin, MC2, felt like it was time to come out about it. Butler had done similar things to MC2 when she was about eleven.

Butler was found guilty of all three counts as charged and was sentenced to an aggregate term of thirty-five years' imprisonment. He now appeals, making arguments concerning the exclusion of evidence under rape shield, the restriction of his voir dire, and the use of the word "victim" by the State and the circuit court.

## I. *Rape Shield*

For his first point, Butler contends that the circuit court erred by excluding the evidence that MC1 was interviewed two years prior to the interview she gave regarding Butler. Butler makes three subpoints. First, he contends that the proposed evidence did not involve any sexual conduct and was therefore improperly excluded. Second, he argues that the court erred in concluding that the proposed evidence's prejudicial effect outweighed the probative value. Third, he explains that the error was not harmless.

The rape-shield statute provides that evidence of specific instances of a victim's prior sexual conduct with any person is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim or for any other purpose. Ark. Code Ann. § 16-42-101(b). However, when the circuit court, at an in camera hearing, makes a written

determination that such evidence is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature, an exception is granted. Ark. Code Ann. § 16-42-101(c). The purpose of the rape-shield statute is to shield victims of rape or sexual abuse from the humiliation of having their sexual conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *Vance v. State*, 2011 Ark. 392, at 7, 384 S.W.3d 515, 519. The circuit court is vested with discretion to determine whether such evidence is relevant and will not be reversed unless the decision constitutes a clear error or a manifest abuse of discretion. *McKee v. State*, 2020 Ark. 327, at 8, 608 S.W.3d 584, 591.

Butler's first argument is that the evidence sought to be established was not sexual conduct unrelated to the pending charges. On appeal, he explains that, specifically, he had proposed to ask MC1 only (1) whether she was interviewed two years prior, and (2) if she said no when asked in that interview if anyone had sexually abused her. "Sexual conduct" for purposes of rape-shield analysis is defined "as deviate sexual activity, sexual contact, or sexual intercourse, as those terms are defined by § 5-14-101." Ark. Code Ann. § 16-42-101(a). The circuit court explained that even giving a prior statement is too obvious when already discussing sexual abuse such that it would be too prejudicial to the victim to outweigh its probative value. Butler contends that the evidence sought "did not involve any such sexual activity . . . . Rather, it involved the lack of such." Butler's argument misses the mark.

Here, Butler is seeking to introduce that MC1 had at some earlier point told an interviewer at the Children's Safety Center that she had no history of sexual abuse, but two

years later told an interviewer at the Children's Safety Center that she had, in fact, been sexually abused by Butler at a young age. Butler seeks to highlight these inconsistent statements and attack MC1's credibility. We agree with the circuit court that when framed against the backdrop of the allegations made against Butler, any discussions of earlier statements or interviews concerning sexual abuse would necessarily implicate MC1's sexual history, generally. The evidence sought to be introduced falls within the scope of the rape-shield statute.

This then leads us to the next part of the analysis and Butler's second subpoint on the topic, which is whether the evidence was properly excluded. Butler explains that the probative value of the evidence sought to be introduced outweighed any possible prejudicial effect. Butler contends that the evidence was crucial, and he was prejudiced because the case is one that hinges on witness credibility.

We agree with the circuit court that any probative value of the evidence was slight. *See Turner v. State*, 355 Ark. 541, 545, 141 S.W.3d 352, 355 (2004) (affirming a circuit court's conclusion about the probative value of an inconsistent statement when "it was understandable for a young girl to be reluctant to talk to a police officer or any other stranger about her sex life"). At trial, it was established that MC1 had not only had the opportunity to tell people about the abuse for several years, but she outright denied it when asked directly. MC1 explained that she had denied any abuse by Butler to this point because she was worried about how the information would hurt her grandmother (who she said was "already a little fragile from him cheating on her and I felt like if I told her about it then she would just . . .

she would break,") and mother ("I knew she would . . .blame it on herself and . . . I didn't want that for her"). On cross-examination MC1 explained that until Christmas of 2020, even when asked directly, she "had denied everything."

The circuit court did not abuse its discretion when it found that the probative value of the evidence did not outweigh its prejudicial effect. The conduct sought to be exposed would have paraded a private facet of MC1's life in front of the jury for little to no tactical gain to the appellant.

## II. *Sentencing Range*

Butler's next point on appeal is that the circuit court abused its discretion by refusing to permit Butler to question the jury about possible sentencing options during voir dire.

Voir dire is conducted to identify and eliminate unqualified jurors—those who are not able to impartially follow the court's instructions and evaluate the evidence. *Reid v. State*, 2019 Ark. 363, 588 S.W.3d 725. How this is accomplished falls within the court's discretion because the extent and scope of voir dire falls within the broad discretion of the circuit court. *Id.* Accordingly, we will not reverse voir dire restrictions unless that discretion is clearly abused. *Id.* An abuse of discretion occurs when the circuit court acts arbitrarily or groundlessly. *Id.*

During voir dire, trial counsel attempted to determine if any of the venirepersons might have been uncomfortable with the sentencing range Butler was facing. Counsel began to discuss the punishment range Butler was facing, but the circuit court sua sponte stopped counsel. Counsel, citing *Dillard v. State*, 363 Ark. 491, 215 S.W.3d 662 (2005), explained he was entitled to ask the jurors if they were uncomfortable with the penalty range for the charged

offenses. The court told counsel that he could not discuss the specific sentencing range. On appeal, Butler contends this was an abuse of the court's discretion.

In *Dillard*, the supreme court held that the circuit court abused its discretion because counsel was permitted to determine "whether the jurors could consider the term of years for aggravated robbery provided by law." 363 Ark. at 495, 215 S.W.3d at 665. The circuit court had sustained a prosecutor's objection following defense counsel's question: "If there is a conviction on aggravated robbery, is anyone uncomfortable with the penalty range being 10 to 40 years, or life, in the Arkansas Department of Prisons?" *Id.* at 493, 215 S.W.3d at 664. After examining cases wherein appellants asserted that the State was presenting penalty ranges to potential jurors in manners that suggested its goal was to empanel juries that would exact longer sentences, the supreme court concluded in Dillard's case that providing the sentencing range is allowed so long as it is done in a way that helps determine if the selected venirepersons will be fair and impartial—and this permission must be extended to the defense as well as the State. *Id.* at 363, 215 S.W.3d at 664. The supreme court still affirmed Dillard's sentence, however, because Dillard could not demonstrate any prejudice from the ruling. The court stated that the jury sentenced Dillard to the minimum number of years of imprisonment for aggravated robbery, which was ten years; therefore, Dillard could not show how he was prejudiced by the abuse of discretion during jury selection.

*Dillard* was recently distinguished in *Nelson v. State*, 2024 Ark. 24, at 12, 683 S.W.3d 177, 189. In *Nelson*, Nelson's counsel wanted to ask the potential jurors "whether they would consider a fine only for a felony offense." *Nelson*, 2024 Ark. 24, at 14, 683 S.W.3d at 190. The

circuit court would not allow the line of questioning, and our supreme court affirmed. In distinguishing *Dillard*, the court explained it remained committed to the concept that a defendant is entitled to inquire if a jury is comfortable with the sentencing options for the charged acts, but that was neither what Nelson asked nor sought. The *Nelson* court further provided, in dicta, that even if it *was* erroneous to limit Nelson's voir dire, Nelson could not demonstrate prejudice. The court wrote, "The jury came back with a sentence on the lower end of the spectrum—eight years. Although this was not the statutory minimum sentence as in *Dillard*, it was an intentional sentence specifically chosen by the jury panel to fit Nelson's conviction based on the evidence presented." *Id.* at 15, 683 S.W.3d at 190.

Butler explains that in his case, however, the error was not harmless because he did not receive the minimum sentences. We are not so persuaded. Butler was convicted of one count of rape and two counts of sexual assault. The jury did not impose the maximum sentence for any of the offenses. The sentence for a Class Y felony is between ten to forty years, or life. Sexual assault, a Class B felony, carries a term not less than five years and not more than twenty. Butler was facing either life plus forty years, or up to eighty years. The verdict forms presented to the jury proposed the full ranges for each count for which Butler was found guilty, and while not the minimum possible ten-year sentence, the thirty-five-year sentence was one that the jury clearly rendered intentionally. Thus, Butler has not demonstrated how he was prejudiced by the restriction placed on his counsel during voir dire, and we will not reverse on this point.

III. *"Victims"*

11

Finally, Butler argues that the circuit court abused its discretion when it denied Butler's motion to preclude reference to the State's witnesses as "victims." We review the denial of a motion in limine under an abuse-of-discretion standard. *Riley v. State*, 2012 Ark. 462, at 6. In an order dated June 29, 2023, the circuit court ordered that "the term 'victim' may be used by either party," but "in the event the term 'victim' is used by the State or any of its witnesses, the Defendant may submit a cautionary instruction regarding the use of the term for the court's consideration."

Butler's counsel requested a standing objection and noted he would prepare a cautionary instruction, but no cautionary instruction was ever proffered or otherwise made part of this record. It is well settled that an admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Hayes v. State*, 2021 Ark. App. 367, at 4. Where the possible prejudice could have been cured by an admonition to the jury, the supreme court has found no abuse of discretion when defense counsel has refused the circuit court's offer of such a curative instruction. *Id.* Butler's failure to pursue curative measures after invitation to do so precludes reversal on this point. *See Stanley v. State*, 317 Ark. 32, 37, 875 S.W.2d 493, 496 (1994); *Hayes*, 2021 Ark. App. 367, at 5.

Affirmed.

GRUBER and BARRETT, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.