Cite as 2025 Ark. App. 417

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CR-24-551

| | | |
|---|---|---|
| JEFFERY D. PARNELL | | |
| | APPELLANT | Opinion Delivered September 10, 2025 |
| V. | | APPEAL FROM THE POLK COUNTY CIRCUIT COURT |
| STATE OF ARKANSAS | | [NO. 57CR-19-189] |
| | APPELLEE | |
| | | HONORABLE ANDY RINER, JUDGE |
| | | AFFIRMED |

**CASEY R. TUCKER, Judge**

At the conclusion of a one-day jury trial, a Polk County jury found Jeffrey Parnell guilty of kidnapping, second-degree domestic battery, and aggravated assault on a family or household member. Following the jury's recommendation, the circuit court sentenced Parnell as a habitual offender to forty years' imprisonment for Class Y felony kidnapping, twenty years' imprisonment for second-degree domestic battery, and twelve years' imprisonment for aggravated assault on a family or household member, with the sentences to run consecutively. Parnell appeals, raising three points: (1) that the evidence was insufficient to support a conviction of Class Y felony kidnapping; (2) that there was insufficient evidence of second-degree domestic battery; and (3) that the circuit court erred in allowing the State to amend the information by extending the date range of the crime on the eve of trial. We affirm.

The State initially charged Parnell with second-degree domestic battery by criminal information filed on September 19, 2019. In that information, the State alleged that the crime took place "on or about August 23, 2019." A series of amended criminal-information filings followed, with the State adding the charges of kidnapping and aggravated assault on a family or household member on December 4, 2019. The State consistently alleged that the crimes took place "on or about August 23, 2019." The State filed its final amended criminal information at 8:37 a.m. on the day of trial, February 22, 2024, changing the allegations to reflect that the crimes occurred "on or about August 20, 2019, to August 23, 2019."

Parnell's trial counsel objected to the amendment, arguing that changing a single date to a date range was a material change and that discovery had been conducted with regard to only one night. The circuit court overruled Parnell's objection. Parnell's attorney then stated, "If it becomes an issue, judge, I'll renew my objection." The jury was seated and trial began.

After admitting volumes of her medical records through the Baptist Health records custodian, the State called the victim, Rhonda Allen, to testify. Allen testified that Parnell was her fiancé, and they were living together in a camper trailer in August 2019 when he inflicted the injuries documented in the medical records. Allen graphically described how Parnell (1) hit her in the head with a Coleman lantern; (2) stomped and kicked her with his steel-toed boots all over her body; (3) slammed her into things; (4) hit her with the back of his hand and with "whatever he could get ahold of"; and (5) prevented her from escaping by

2

grabbing her and yanking her back, pulling her by her hair and pulling out wads of it in the process. Allen testified that she begged and screamed for help. When Allen tried a second time to escape, Parnell grabbed her by her neck and lifted her off the floor. Allen testified she felt like she was going to die: "I wasn't even touching the floor and he slammed me down and then he ~ it's like he was trying to pull my goozle plum out, and then he just shoved it in and I couldn't breathe." Parnell chained the door after Allen's failed escape attempts. Based on Allen's testimony, Parnell's attack lasted, intermittently, the entire night. The next morning, when Allen's friend, Annette Turner, walked by the camper on her way to work, Allen yelled for help. Seeing Annette approach the camper, Parnell removed the chain from the door. When Annette came to the door, Allen was able to leave.

Allen did not immediately seek medical attention nor did she contact law enforcement. She testified, however, that someone, perhaps a neighbor, reported the incident. When EMTs and law enforcement first went to the camper, Allen refused treatment. An investigator with the prosecutor's office then contacted her on August 23, 2019, to come in for an interview, and she did so that evening.

On August 24, 2019, Allen went by ambulance to the emergency room in Fort Smith. She never returned to the residence she shared with Parnell; instead, she went to the Women's Crisis Center, where she lived for three months. Allen testified that she had severe depression and anxiety following the attack and took classes for abused women, depression, and posttraumatic stress syndrome (PTSD). She saw three different doctors for months. As

3

of the date of the trial, Allen continued to have "bad sickening headaches," short-term memory problems, and pain in one of her hips.

On August 23, Elena Cannon, an investigator with the Polk County Prosecutor's Office, received the report of Parnell's beating Allen and began investigating. She interviewed Allen, photographed her extensively, and took photos of the camper where Parnell and Allen lived. Cannon testified that Allen had bruising all over her face, on her neck, and on her chest. Allen's eyes were swollen to the point that her vision was affected, and she struggled to see. Cannon testified that Allen had bruising to both of her upper arms, on the back of her shoulders, and the front and back of her legs. In addition to the bruising on the back of her shoulders, Allen had bruising to her lower back. She had a cut on her head, was missing parts of her hair, and her ponytail or bun was hanging on by just a few attached strands. Cannon testified that Allen had an unusually extensive amount of bruising. The State admitted the photographs depicting Allen's injuries and missing hair into evidence through Cannon's testimony.

Cannon also testified regarding her interview of Parnell, and the recorded interview was played for the jury. In the recorded interview, Parnell admitted keeping Allen in the camper against her will from about midnight until almost daylight. He stated that Allen was mad and acting crazy, which he assumed had to do with some recent interaction with a nearby acquaintance of hers with whom she constantly argued and fought. He also stated that Allen was mad because she wanted a cigarette and did not have any. Parnell told the investigator he physically kept Allen against her will because he was afraid she would go to

her nearby acquaintance's mobile home where they were doing drugs and drinking and that she would get into trouble. Parnell admitted repeatedly grabbing Allen and holding her on the couch against her will. He noticed some swelling around Allen's eye but told Cannon he did not notice much in the way of other injuries or a cut on her head until daylight due to the lack of electricity in the camper. Parnell denied hitting Allen in the head with the lantern but stated that her head was "all over that camper," so she might have hit her head on the lantern. Parnell admitted to Cannon that Allen complained of her head hurting and that she screamed in pain that he thought was legitimate.

Dr. James Russell, the emergency room doctor who treated Allen at Baptist Health Fort Smith, was called as a State's witness. He testified that Allen had multiple facial fractures: a fracture of her left orbital floor, a fracture of the nearby left lamina papyracea, fractures of the interior and posterior walls and the left maxillary sinus, and bilateral nasal bone fractures. Dr. Russell further testified that Allen had bruising to the front and back of her chest resulting in reported chest pain and difficulty breathing. Dr. Russell referred Allen to a plastic surgeon for follow-up. The medical records reflect that Allen was prescribed steroids, prescription pain medicine, and antibiotics.

At the close of the State's case, Parnell moved for directed verdicts, arguing that the State failed to present sufficient evidence that (1) he restrained Allen for the purpose of causing physical injury or inflicting physical injury; (2) he prevented Allen from breathing by choking, applying pressure to the throat, or blocking her mouth or that he did so under circumstances demonstrating indifference to the value of human life; or (3) he inflicted

5

serious physical injury with the purpose of causing physical injury. The circuit court denied the motions for directed verdict as to each count.

Parnell testified in his defense, then rested and renewed his motions for directed verdict. The circuit court denied the motions. The jury found Parnell guilty on all three counts, and the circuit court sentenced him accordingly. This appeal followed.

I. *Sufficiency of Evidence to Support Class Y Kidnapping*

Parnell first argues that the evidence was insufficient to support a conviction of Class Y kidnapping because he voluntarily released Allen alive and in a safe place prior to trial, thereby reducing the offense to a Class B felony. The State responds that Parnell's argument is not preserved for review. The State is correct.

To preserve a challenge to the sufficiency of the evidence in a jury trial for appellate review, the defendant must move for a directed verdict at the close of the State's case-in-chief and at the close of all the evidence. Ark. R. Crim. P. 33.1(a); *Steen v. State*, 2020 Ark. App. 73, 595 S.W.3d 47. The defendant must be specific in his motion for directed verdict. *Steen, supra*. We strictly construe Rule 33.1. *Grube v. State*, 2010 Ark. 171, 368 S.W.3d 58. The reason for this rule is that when the defendant states the specific grounds for the motion and pinpoints the missing proof, the trial court can then decide whether to grant the motion or allow the State to reopen its case and supply the missing proof. *Elkins v. State*, 374 Ark. 399, 288 S.W.3d 570 (2008). Another reason for this rule is that the appellate court cannot review an issue raised for the first time on appeal. *Id.* Failure to follow these rules constitutes

a waiver of the defendant's challenge to the sufficiency of the evidence on appeal. Ark. R. Crim. P. 31.1(c); *Steen, supra.* See also *Taylor v. State*, 2024 Ark. App. 555, 700 S.W.3d 240.

The State charged Parnell with kidnapping in violation of Ark. Code Ann. § 5-11-102(a)(4) (Repl. 2024), which provides that a person commits the offense of kidnapping if he restrains another person so as to substantially interfere with the other person's liberty for the purpose of "inflicting physical injury upon the other person." Section 102(b) provides that kidnapping is a Class Y felony unless the defendant shows by a preponderance of the evidence that he voluntarily released the person alive and in a safe place prior to trial, in which case the offense of kidnapping is reduced to a Class B felony.

At the conclusion of the State's case, Parnell moved for a directed verdict on each charge. As to the charge of kidnapping, Parnell argued:

> The State has failed to present sufficient evidence without surmise or conjecture that Jeffrey Parnell restrained her for the purpose of causing physical injury or inflicting physical injury.

Parnell renewed his motions for directed verdict without alteration or addition at the close of all the evidence. *Parnell did not argue that he had proved by a preponderance of the evidence that he released Allen alive and in a safe place prior to trial; thus, the offense should be reduced from a Class Y to a Class B felony.*

In *Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510, the appellant was convicted of aggravated robbery and kidnapping and sentenced to two consecutive terms of life imprisonment. One of his arguments on appeal was that the evidence was insufficient to support a conviction of Class Y kidnapping because the evidence proved that he released the

7

victim in a safe place. The Arkansas Supreme Court addressed the preservation of Sweet's argument as a threshold matter, finding that it was not preserved due to the substance of his motion for directed verdict. The court explained:

> In his motion for directed verdict following the State's case-in-chief, appellant argued only that the State failed to present sufficient evidence that the victim's liberty was substantially interfered with or that she had not consented to the restraint. Appellant's renewal of that motion was substantially the same. Appellant never argued below that the evidence presented by the State proved Class B felony kidnapping but not Class Y. Pursuant to our case law, we decline to address that specific argument because it was not preserved for our review.

*Id.* at 13, 370 S.W.3d 520.

Similarly, in *Perez v. State*, 2020 Ark. App. 367, 607 S.W.3d 507, the appellant argued that he released his kidnapping victim; thus, the trial court should have imposed punishment under the Class B felony range rather than Class Y. This court found that this argument was not preserved, stating:

> At the conclusion of the State's case, Perez's attorney moved for a directed verdict on the kidnapping charge by arguing that the State had not proved beyond a reasonable doubt that Perez unlawfully restrained Gonzalez by interfering with her liberty with the purpose of terrorizing and causing physical injury to her. Perez did not move for a directed verdict on whether he had proved by a preponderance of the evidence that he released Gonzalez alive and in a safe place.
>
> Appellant never argued to the circuit court that the evidence presented by the State was insufficient to prove Class Y felony kidnapping as a matter of law and that only Class B felony kidnapping could be considered by the jury. In the absence of doing so, appellant failed to preserve the argument for appellate review.

*Id.* at 3, 607 S.W.3d at 509.

*Sweet* and *Perez* are directly applicable to the case before us. As in *Sweet* and *Perez*, Parnell never argued to the circuit court that he had proved he safely released his victim; thus, the kidnapping charge should go to the jury only as a Class B felony. Parnell raises this argument for the first time on appeal. As in *Sweet* and *Perez*, we decline to address this specific point because it is not preserved for our review.

II. *Sufficiency of the Evidence to Support Second-Degree Domestic Battery*

Appellant argues that the evidence presented at trial was insufficient to support a conviction of second-degree domestic battery because the physical injuries sustained by his victim were not "serious." We disagree.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only that evidence supporting the verdict. *Miller v. State*, 2025 Ark. App. 229, 711 S.W.3d 850; *Taylor v. State*, 2024 Ark. App. 555, 700 S.W.3d 240. We affirm a judgment of conviction if it is supported by substantial evidence. *Taylor, supra.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without requiring the jury to resort to speculation or conjecture. *Id.*

The State charged Parnel with second-degree domestic battery pursuant to Ark. Code Ann. § 5-26-304(a)(1) (Repl. 2024), which states that a person commits domestic battering in the second degree if "[w]ith the purpose of causing physical injury to a family or household member, the person causes serious physical injury to a family or household member." The code defines "serious physical injury" as one "that creates a substantial risk of death or that

9

causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ." Ark. Code Ann. § 5-1-102(21) (Repl. 2024). This court has explained the role of the jury in determining whether an injury is "serious" as defined in Section 102(21):

> Whether a person has suffered serious physical injury is ordinarily an issue for the trier of fact. *Johnson v. State*, 2017 Ark. App. 71, 510 S.W.3d 298. It is not necessary that the impairment be permanent but only protracted, and the fact that the victim ultimately recovers has no bearing on whether the injury sustained is serious. *Williamson v. State*, 2011 Ark. App. 73, 381 S.W.3d 134. Furthermore, expert medical testimony is not required to prove serious physical injury as the finder of fact may use its common knowledge to determine whether such an injury occurred. *Johnson, supra.*

*Huggins v. State*, 2021 Ark. App. 74, at 3, 618 S.W.3d 187, 189. *See also Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991).

The injuries in the case before us are akin to those in *Ashmore v. State*, 2024 Ark. App. 506, in which the appellant also appealed his conviction of second-degree domestic battery, arguing in part that the injuries inflicted on the victim did not constitute "serious" injuries. This court disagreed, stating:

> Dorothy testified that Eddie punched her jaw and knocked her to the ground; pulled her up by ripping hair from her head; injured her elbow when he tackled her; lifted her by her ring finger, causing bleeding and bruising; threw her to the garage floor where she landed on her back and slid across the floor; straddled her and slammed her head to the floor; kicked her in the thigh; hit her in the face a second time, knocking her to her knees; and headbutted her four or five times before rolling her over and punching her repeatedly in her kidneys. Dorothy underwent physical therapy, and she wore a boot on her foot and a brace on her elbow as a result of her injuries. From this evidence, the jury could determine that Eddie caused serious injuries to his wife.

*Id.* at 5.

10

In the present case, Allen testified Parnell repeatedly hit her in the face with such force that he broke several facial bones and caused lacerations to her head when he hit her with a lantern. Cannon testified that Allen had bruising consistent with being kicked in the chest and about her body with steel-toed boots. Parnell admitted picking Allen up by her neck to pull her away from the door, which Allen testified was with such force that she could not breathe. As in *Ashmore*, Allen accused Parnell of dragging her across the floor by her hair, pulling out large amounts and leaving large bald spots. According to Cannon, Allen had an unusually extensive amount of bruising and her ponytail was hanging by a few strands during her interview. Allen was under the care of multiple doctors for months. Four and a half years after the incident, Allen testified at trial that she still had "sickening headaches," problems with her short-term memory, and recurrent pain in one of her hips. This evidence is sufficient to support the jury's determination that Parnell caused "serious physical injuries" to his victim as is required for a conviction of second-degree domestic battery under section 5-26-304(a)(1). And it was within the province of the jury to consider credibility and believe—or not—part or all of any witness's testimony. *Miller v. State*, 2025 Ark. App. 229, at 4, 711 S.W.3d 850, 853–54. ("Matters of credibility are for the jury, which can choose to believe part or all of any witness's testimony and resolve any conflict in the evidence or testimony.").

Parnell references *Hall v. State*, 11 Ark. App. 53, 666 S.W.2d 408 (1984), in support of his position that this court should reduce his conviction from second-degree to third-degree domestic battery. In *Hall*, this court reduced the appellant's conviction when the child victim's injuries were extensive bruising to his entire body and to his ear. The court

11

found this constituted "physical injury" rather than "serious physical injury" and reduced the conviction from second-degree battery to third-degree battery, remanding the case to the trial court for resentencing.

Parnell's argument is that Allen's claim that she had broken ribs was not supported by the medical records and that she had several bruises and experienced pain but did not need surgery. In relying on *Hall*, Parnell conveniently fails to mention that as a result of his beating her, Allen sustained fractures to multiple facial bones in addition to extensive bruising and injuries from which she still suffered at the time of trial. These injuries distinguish the present case from *Hall*, *supra*.

### III. *Amendment to the Criminal Information*

Parnell argues that the circuit court's allowing the State to amend the information the morning of trial created unfair surprise and gutted his case in that his "entire defense was geared toward showing the charged acts could not have occurred on the original date charged." Thus, he argues, this court should reverse and remand for retrial. The State responds that Parnell did not preserve this argument for appeal, and even if he did, the circuit court did not err in allowing the amendment.

The amendment to the information changed the date of the alleged offenses from "on or about August 23, 2019" to "on or about August 20, 2019, to August 23, 2019." On the day of trial, before voir dire began, the court held a bench conference at which Parnell's attorney objected to the amendment, stating that the change was a material change from an isolated date to a date range. In denying Parnell's objection, the court stated: "I'm going to

12

overrule the objection at this time. I'm going to instruct the jury about the criminal information and then if there's something I need to take up later, I'll be glad to do that. But I'm going to read the amended criminal information." Parnell's attorney then stated that all the discovery was directed to the one date of August 23, 2019. The State responded that the information already had alleged "on or about" August 23, and the amendment only extended the "on or about" back to August 20, which was in line with the information contained in the State's file that the State provided to Parnell's counsel. Defense counsel then appeared to acquiesce, stating, "If it becomes an issue, Judge, I'll renew my objection." Defense counsel never renewed his objection, indicating that the amendment never became an issue.

In order to preserve an argument for appellate review, a party must raise it at trial. *Gilliland v. State*, 2010 Ark. 135, 361 S.W.3d 279. Arguments not raised at trial will not be addressed for the first time on appeal. *Plessy v. State*, 2012 Ark. App. 74, 388 S.W.3d 509. Parties are limited by the scope of their arguments and objections raised before the circuit court and cannot change the grounds for objection on appeal. *Id.* Here, Parnell waived his objection to the amended information when he did not raise it at any point during the trial. Assuming he had raised the objection he made during the bench conference, it differs from the argument he now makes on appeal. Before the circuit court, he argued that the amendment was a material change and the discovery was directed to only one date, August 23, 2019. On appeal he argues that the amendment caused unfair surprise and that the entire defense was geared toward showing the charged offenses could not have occurred on

13

August 23.  As Parnell did not make this argument before the circuit court, it is not preserved for appellate review.

Even if this argument were preserved, it is without merit.  A felony information may be amended with permission from the circuit court prior to the case being submitted to the jury as long as the amendment does not change the nature of the crime charged or create an unfair surprise for the defendant.  *Thomas v. State*, 2022 Ark. 12, 637 S.W.3d 268.  As noted by the State, generally, the date a crime is alleged to have occurred is not of critical significance, unless the date is material to the offense. *Bean v. State*, 2014 Ark. App 107, 432 S.W.3d 87.[1]  Prejudice is not presumed absent the defendant's moving for a continuance or claiming surprise once put on notice of the State's planned amendment, and we will not reverse a conviction in the absence of prejudice.  *Curl v. State*, 2019 Ark. App. 200, 575 S.W.3d 458.

In the present case, Parnell did not claim surprise or move for a continuance.  Indeed, he could not very well claim surprise when he had told Cannon that the night he kept Allen in the camper all night against her will was on either the Wednesday or Thursday night before Cannon spoke with Allen on Friday, August 23, 2019.  And, when asked at trial what night the confrontation with Allen happened Parnell testified, "Well, it was on the 19th or 20th."  The court's allowing the amendment of the felony information to include a date

---

[1]Having reviewed the transcript, we disagree with Parnell's claim on appeal that his whole defense was "geared toward showing the charged acts could not have occurred on the original date charged."

range for the alleged offenses did not create an unfair surprise for Parnell since he already had knowledge of the facts supporting the amendment. *See Baumgarner v. State*, 316 Ark. 373, 872 S.W.2d 380 (1994).

Affirmed.

VIRDEN and BROWN, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.